UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:25-CV-00844-SK                                Date: September 5, 2025
Title   Yvette Romo et al. v. Ford Motor Company et al.

Present: The Honorable:  Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| None present | None present |

**Proceedings:**   (IN CHAMBERS) **ORDER DENYING PLAINTIFF'S MOTION TO REMAND [ECF 13]**

## I.
## BACKGROUND

In June 2021, plaintiffs Yvette and Sergio Romo bought a new 2021 Ford F-150 manufactured by Defendant Ford Motor Company, which they "purchased for a total price of more than $25,000." (ECF 1-1 at 8). According to plaintiffs, the vehicle soon enough displayed certain material defects within the applicable warranty period that Ford's representatives couldn't repair after a reasonable number of attempts. (*Id.* at 8-9). Ford then, they claimed, failed to timely replace or repurchase the nonconforming vehicle as required by California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, 1793.2. (*Id.* at 6-10). And not only that, but plaintiffs alleged that Ford "acted willfully in its failure to comply with the Song-Beverly Act." (*Id.* at 8, 10). For such willful violations, as plaintiffs correctly understood, the Song-Beverly Act provides for "a civil penalty in the amount of two times [their] actual damages." (*Id.* at 10). Based on these allegations, plaintiffs sued Ford in Los Angeles County Superior Court. (ECF 1 at 1; ECF 1-1 at 6-11). In their state-court complaint, plaintiffs demanded general and special compensatory damages to include "reimbursement of the price paid and/or owed for the Subject Vehicle" (subject to any applicable mileage offset), the maximum civil penalty allowed under the Song-Beverly Act, and reasonable attorney's fees. (ECF 1-1 at 8, 10).

Ford answered plaintiff's complaint but soon after removed the case to federal court invoking federal diversity jurisdiction under 28 U.S.C. § 1332. (ECF 1 at 2; ECF 1-2 at 2-5). In its removal notice, Ford alleged complete diversity of citizenship (because

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-CV-00844-SK | Date: September 5, 2025 |
| Title   Yvette Romo et al. v. Ford Motor Company et al. | |

Plaintiffs are California residents while Ford is considered a citizen of Delaware or Michigan) and an amount in controversy of least $96,599.93, exclusive of attorney's fees.[1] (ECF 1 at 4-8). Ford calculated this figure presupposing that plaintiffs' complaint was "indeterminate" on its face about the minimum amount in controversy. (*Id.* at 2-4). And so, in its removal notice, Ford not only identified the documented original purchase price of the subject vehicle according to its records (before potential offsets, credits, or adjustments) but also assumed it might be liable for at least a partial civil penalty based on the willful violation of the Song-Beverly Act alleged in plaintiffs' complaint. (*Id.* at 5-8).

Homing in mainly on the question of civil penalty, plaintiffs moved to remand the action to state court arguing (among other things) that Ford had not met its own—assumed—burden to prove that plaintiffs would be awarded a civil penalty in an amount sufficient to help meet the $75,000 amount-in-controversy requirement, even if they prevailed in the end. (ECF 13). Opposing the remand motion, Ford again presumed that the amount in controversy was indeterminable on the face of plaintiffs' complaint and undertook a second detailed accounting effort to calculate another (and presumably even more precise) amount that Ford might owe plaintiffs in total recovery—including restitution, civil penalty, and attorney's fees—if found liable for its alleged willful violation of the Song-Beverly Act. (ECF 14). Ford even started with a new net restitution amount—even though plaintiffs had never materially contested the original net restitution figure in the removal notice. (*See id.* at 13-14). Then, producing the subject vehicle's sales contract, the car's repair history (which showed at least six presentments for repair), and a fact declaration about the historical litigation practices of plaintiffs' counsel in similar lemon-law cases, Ford asserted that the amount in controversy based on that evidence was at least $148,564.56—which included a maximum civil penalty amount—even before adding in attorney's fees.[2] (ECF 14 at 13-16; *see* ECF 14-1; ECF 14-2; ECF 14-3).

---

[1] To reach that figure, Ford's math started with $93,144.50 for the vehicle purchase price, subtracted $39,477.87 for an estimated mileage offset, and added a "conservative" $42,933.30 civil penalty amount equivalent to only 80% of the calculated net restitution ($93,144.50 - $39,477.87 = 50,456.63 x 0.8 = $42,933.30). (ECF 1 at 6-8). While it didn't need to add anything more, Ford also estimated that plaintiffs had accrued at least $7,500 in attorney's fees as of removal, yielding a total possible amount in controversy as high as around $104,099.93. (*Id.* at 8).

[2] To arrive at this revised figure, Ford deducted an even higher mileage offset ($40,412.98) plus a manufacturer rebate ($3,210) from the vehicle's sales price, yielding a net restitution amount of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-CV-00844-SK | Date: September 5, 2025 |
| Title   Yvette Romo et al. v. Ford Motor Company et al. | |

In reply, at least for remand purposes, plaintiffs again accepted Ford's revised net restitution figure ($49,521.52). (*See* ECF 16 at 2, 5). In doing so, however, plaintiffs never contested Ford's calculation of the vehicle's original purchase price (according to the vehicle sales contract) or claim that the total amount of their claimed damages plus recoverable attorney's fees would, in fact, somehow end up below the statutory $75,000 threshold.[3] Nor did plaintiffs disavow any intent to seek "up to" the maximum civil penalty permitted by the Song-Beverly Act, as demanded in their complaint, for Ford's alleged willful violation of the Act. Instead, plaintiffs argued that (even setting aside attorney's fees) Ford had failed to prove that the amount-in-controversy condition was met because Ford had produced insufficient evidence to prove that they were likely to be awarded any civil penalty (let alone a specified amount of attorney's fees)—without which even Ford evidently conceded it couldn't meet the statutory threshold based solely on restitution after netting offsets, rebates, or other potential adjustments to the subject vehicle's purchase price. (*See* ECF 16).

For the reasons summarized at the hearing on plaintiffs' remand motion, which are further reiterated and detailed here, the motion is denied.

## II.
## DISCUSSION

A defendant may remove a civil case from state court so long as jurisdiction would lie in the federal court of the district where the action is pending. *See* 28 U.S.C. § 1441(a). Removal may be based on diversity jurisdiction if (1) there is complete diversity of citizenship between the parties and (2) the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). But the amount in controversy is simply the "amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)). It is a plausible estimate of the "total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*,

---

$49,521.52, but then made up for that difference by adding back in a full 200% civil penalty ($99,043.04). (ECF 14 at 14-16). Thus, according to Ford's recalculations, the amount in controversy was at least $148,564.56 based on net restitution and a maximum civil penalty, even excluding attorney's fees. (*Id.* at 16).

[3] The most plaintiffs did to challenge Ford's calculations was to argue that the claimed purchase price stated in Ford's removal notice should have been reduced by $3,210 for a manufacturer rebate. (ECF 13-4 at 5).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-CV-00844-SK | Date: September 5, 2025 |
| Title   Yvette Romo et al. v. Ford Motor Company et al. | |

627 F.3d 395, 400 (9th Cir. 2010).  Depending on the case, the amount at stake or in dispute for removal purposes can include "damages (compensatory, punitive, or otherwise) . . . and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch*, 899 F.3d at 793.  In all cases, though, "the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

When it is the removing party, the defendant bears the burden of establishing federal diversity jurisdiction—including the amount in controversy.  *See More-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).  And there are "at least three different burdens of proof which might be placed on a removing defendant under varying circumstances." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir.2007).  When a state court complaint alleges on its face an amount in controversy sufficient to meet the federal jurisdictional threshold, the requirement is "presumptively satisfied unless it appears to a legal certainty that the plaintiff cannot actually recover that amount." *Id*.  When the state court complaint is "unclear or ambiguous" as to amount in controversy, the removing defendant must establish by a preponderance of the evidence that the jurisdictional amount is met. *Id*.  Finally, "when a state court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the party seeking removal must prove with legal certainty that [the] jurisdictional amount is met." *Id*.

Under the first scenario, whether "removability is ascertainable" on the face of the complaint is usually determined only "from examination of the four corners of the applicable pleading[.]" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 886 (9th Cir. 2010) (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)).  That doesn't mean, however, that a removing defendant cannot "apply a reasonable amount of intelligence in ascertaining removability," including by "[m]ultiplying figures clearly stated in a complaint." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001)).  What's more, when assessing whether the required amount in controversy is reasonably ascertainable on the face of a complaint, courts must recognize that the "plaintiff is the master of his complaint." *Ruiz v. Bradford Exch., Ltd.*, --- F.4th ---, 2025 WL 2473007, at *6 (9th Cir. Aug. 28, 2025) (quoting *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021)).  So just as plaintiffs are free to selectively plead claims in a way to tactically avoid federal court jurisdiction, *see*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-CV-00844-SK | Date: September 5, 2025 |
| Title        Yvette Romo et al. v. Ford Motor Company et al. | |

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), so too must they accept the consequences of pleading in a way that plausibly confers federal court jurisdiction. *See, e.g., Schneider v. Ford Motor Co.*, 441 F. Supp. 3d 909, 912 (N.D. Cal. 2020); *Gonzales v. Ford Motor Co.*, 2025 WL 1166056, at *2 (C.D. Cal. Apr. 21, 2025); *Ruiz v. Nissan N. Am., Inc.*, 2025 WL 1911691, at *2 (C.D. Cal. July 11, 2025).

      These first principles—applied straightforwardly here—eliminate any need to traverse beyond plaintiffs' complaint to establish an adequately plausible amount in controversy exceeding $75,000.[4]  Under the Song-Beverly Act, plaintiffs may recover in actual damages an amount "equal to the actual price paid or payable [for the vehicle] by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B); *see* Cal. Civ. Code § 1794(b).  Here, plaintiffs allege to have "purchased" the subject vehicle "for a total price of more than $25,000." (ECF 1-1 at 8).  Just because plaintiffs avoided stating the exact purchase price doesn't mean that it is otherwise unclear or ambiguous on the face of the complaint what the *minimum* amount at stake is—$25,001 (or $25,000.01 for those who like pennies).  At the same time, the Song-Beverly Act provides for a civil penalty of up to "two times the amount of actual damages" if a defendant's failure to comply with the Act was willful.  Cal. Civ. Code § 1794(c).  "Courts treat the Song-Beverly Act's civil penalties akin to punitive damages," which are properly considered in the amount-in-controversy assessment.  *Gonzales*, 2025 WL 1166056, at *5 (quoting *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 901 (S.D. Cal. 2021)).  And here, plaintiffs allege in their complaint that Ford "willfully" violated the Act and thus seek "up to" the maximum statutory civil penalty of "two times [plaintiffs'] actual damages." (ECF 1-1 at 8-10).  Just because the exact multiplier could vary doesn't mean that the complaint itself is forever "indeterminate" about whether a civil penalty is in dispute and calculable up to a sum certain.  *See Arias*, 936 F.3d at 927; *Gonzales*, 2025 WL 1166056, at *5.  Contrary to plaintiffs' assumption, "whatever the likelihood that [they] will actually recover" a civil penalty is beside the point when ascertaining an amount in controversy from the face of their own allegations in the complaint.  *Chavez*, 888 F.3d at 417.  Based on the alleged minimum purchase price of $25,001 plus up to two times that amount in

---

[4] And while the parties may have uncritically assumed that the amount in controversy is indeterminable on the face the complaint, federal courts "have an independent obligation" to determine their own subject matter jurisdiction no matter what the parties may argue or assume. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018) (citing *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   2:25-CV-00844-SK | Date: September 5, 2025 |
| Title   Yvette Romo et al. v. Ford Motor Company et al. | |

maximum a civil penalty, the amount in controversy ascertainable from the complaint alone exceeds $75,000. *See Kuxhausen*, 707 F.3d at 1140.

Even if the minimum amount in controversy were indeterminable from the face of plaintiffs' complaint, however, Ford has met its burden to show that any plausible amount at stake exceeds the jurisdictional threshold by a preponderance of the evidence. *See Guglielmino*, 506 F.3d at 699. For starters, plaintiffs never materially dispute any of the evidence Ford produced and relied on to calculate its net financial exposure for restitution if found in violation of the Song-Beverly Act. (ECF 14 at 14; ECF 14-2; *see* ECF 16 at 2, 5). The court thus has no reason to question Ford's most current estimated figure of $49,521.52 in actual damages.[5] *See, e.g.*, *Pulver v. Nissan N. Am., Inc.*, 2025 WL 1766529, at *4 (C.D. Cal. June 25, 2025). Nor do plaintiffs provide any convincing reasons to doubt Ford's evidence plausibly suggesting that a civil penalty may be awarded here. (*See* ECF 16 at 2-6). Plaintiffs certainly don't foreclose that outcome. (*See* ECF 1-1 at 8-10). And as the subject vehicle's repair history produced by Ford reveals, plaintiffs presented the allegedly nonconforming vehicle at least six times before filing suit. (*See* ECF 14-1 at 2; ECF 14-3). This evidence, when combined with the allegations in plaintiffs' complaint seeking a maximum civil penalty, is more than enough to show that an amount as much as two times $49,521.52—i.e., $148,564.56—is plausibly at stake in this lemon-law suit, even excluding attorney's fees. *See Ruiz*, 2025 WL 1911691, at *5; *see also Canesco*, 570 F. Supp. 3d at 902 (lemon-law

---

[5] That said, it is not obvious to the court that—for purposes of ascertaining the amount in controversy at the removal stage—Ford had to deduct in every possible actual-damages equation the estimated value "directly attributable to use [of the vehicle] by" plaintiffs before they presented the vehicle for repair. (*See* ECF 1-1 at 8; ECF 14 at 13-14). Generally, offsets are considered affirmative defenses that can later reduce a damages award to prevent a windfall *after* liability has been decided, not something that must always be factored into every amount-in-controversy calculation at the pre-discovery pleading stage. *See, e.g.*, *Selinger v. Ford Motor Co.*, 2023 WL 2813510, at *8 (C.D. Cal. Apr. 5, 2023); *compare, e.g.*, *Schneider v. Ford Motor Co.*, 756 F. App'x. 699, 701 n.3 (9th Cir. 2018) (recognizing that amount in controversy can be capped to a legal certainty at pleading stage if a specific "rule of law or measure of damages limits the amount of damages recoverable" below the required jurisdictional amount) (quoting *Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983)). Besides, a mileage offset is permitted—not required—by the Song-Beverly Act when repurchasing a nonconforming vehicle. *See* Cal. Civ. Code § 1793.2(d)(2)(C). So requiring that a mileage offset be applied—without exception—in every lemon-law repurchase case when faced with an amount-in-controversy dispute not only counterintuitively flips the liability determination before the jurisdictional one but also perversely shifts the burden of proving liability onto the defendant before merits discovery has even started. There is no a priori reason to think that the application of 28 U.S.C. § 1332 should be contorted this way to make a straightforward jurisdictional determination. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 289; *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-CV-00844-SK | Date: September 5, 2025 |
|---|---|---|
| Title | Yvette Romo et al. v. Ford Motor Company et al. | |

defendant need not "'prove a case against itself' with respect to liability for civil penalties" to establish minimum amount in controversy).

## III.
## CONCLUSION

For all these reasons, plaintiffs' motion to remand this action to state court (ECF 13) is DENIED.  The parties are ordered to proceed according to the scheduling order previously entered.